[No. G001440. Fourth Dist., Div. Three. July 29, 1985.]

THE PEOPLE, Plaintiff and Appellant, v.
DON LEE LUSK, JR., Defendant and Respondent.

## COUNSEL

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, William W. Bedsworth and Kaz Makino, Deputy District Attorneys, for Plaintiff and Appellant.

Wallin, Roseman & Talmo, Wallin, Roseman & Klarick, Ronald V. Talmo and Paul J. Wallin for Defendant and Respondent.

## OPINION

**McLAUGHLIN, J.**[*]—The People appeal[1] from the superior court's order modifying 22 counts of an information from Penal Code section 288, subdivision (b) to the lesser offenses of section 288, subdivision (a). We must determine whether preventing resistance by causing a victim to be drugged constitutes use of force within the meaning of section 288, subdivision (b). We conclude it does and reverse the order with directions.

I

Between 1978 and 1983, Don Lee Lusk, Jr., was director of the Boys' Club in the City of Cypress. In 1979, Lusk first met Robert L. When Robert was 15 he began living with Lusk due to problems Robert was having with his father. Shortly thereafter, Lusk and Robert began engaging in acts of oral copulation and sodomy. They continued these sexual acts throughout the time they lived together. Before Lusk participated in sex acts with Robert, Lusk would provide Robert with various drugs including cocaine, valium, codeine, and soma. Robert knew two brothers, Michael H. and Tony H., born on September 4, 1968, and May 20, 1970, respectively. Lusk was the brothers' wrestling coach.

At Lusk's preliminary hearing, a videotape was received into evidence.[2] This tape first shows Robert nude in the bathroom. Next, it shows Michael, unconscious, lying on a sofa. Michael is shown clothed, then naked, and finally being masturbated and sexually molested in various ways by Lusk.

---

[*]Assigned by the Chairperson of the Judicial Council.

[1]This appeal is brought pursuant to Penal Code section 1238, subdivision (a)(6), which provides: "(a) An appeal may be taken by the People from any of the following: . . . (6) An order modifying the verdict or finding by reducing the degree of the offense of the punishment imposed or modifying the offense to a lesser offense."

[2]The preliminary hearing was held on December 12-15, 1984.

Michael is unconscious throughout the tape. Tony is also shown on the tape. He is unconscious and is shown being masturbated and orally copulated by Lusk. At various points, Lusk manipulates Tony's body including, at one point, tying Tony's testicles and penis tightly with a cloth sash.

Robert testified at the preliminary hearing, identifying himself and Lusk's apartment on the tape. Michael's and Tony's mother testified, identifying her sons, Lusk, and Lusk's furniture on the tape. Neither Michael nor Tony testified. The magistrate, in binding over Lusk to superior court, said: "The Court feels there is sufficient evidence that the victim [Tony] was drugged out of his mind."

The People filed an information charging Lusk with 46 counts of various sex offenses allegedly committed against Robert, Michael, and Tony. Twenty-two counts charged Lusk with violation of section 288, subdivision (b) against Tony.[3] Additionally, as to 15 of the section 288, subdivision (b) counts[4] and count 46, the information alleged Lusk occupied a position of special trust and committed an act of substantial sexual conduct within the meaning of Penal Code section 1203.066, subdivision (a)(9).

On March 8, 1984, the court heard and denied Lusk's section 995 motion except as to the section 288, subdivision (b) counts, which the court modified to lesser offenses, namely, section 288, subdivision (a) counts.[5] Lusk pleaded guilty to all 46 counts and admitted the truth of all the special allegations. The court postponed sentencing Lusk pending the outcome of this appeal.

## II

Lusk questions the timeliness of the People's appeal. On April 30, 53 days after Lusk's section 995 motion was decided, the People's notice of appeal was stamped "Received" by the Clerk of the Orange County

---

[3]Counts 18-28; 30-33; and 36-42.

[4]Counts 25-28; 30-33; and 36-42.

[5]Section 288 provides in relevant part as follows: "(a) Any person who shall willfully and lewdly commit any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony . . . (b) Any person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or threat of great bodily harm, shall be guilty of a felony . . . ."

The court said in making its order: "But to say that there was force, violence, duress, menace or threat of great bodily harm, I just do not see it in the record, even as it is amplified by the videotape, and the court is going to grant the motion in that limited sense, but leave each one of those separate counts as a viable count under [section] 288(a)."

Superior Court and served on Lusk's counsel. For unknown reasons, the clerk's office did not stamp "Filed" on the notice of appeal until May 10, 63 days after Lusk's section 995 motion was decided. Lusk contends the People's notice of appeal was not timely filed in compliance with California Rules of Court, rule 31(a).[6] We disagree. The People did everything necessary to perfect timely filing of the notice of appeal. A reviewing court has the power to relieve a party from failure to timely file a notice of appeal if the party has diligently attempted to file the notice, but was prevented by conduct of public officials. (*In re Gonsalves* (1957) 48 Cal.2d 638 [311 P.2d 483].) Such is the situation here.

## III

At the time the court modified the section 288, subdivision (b) counts to section 288, subdivision (a) counts, no California court had construed the term "force" as used in section 288, subdivision (b), or discussed whether preventing resistance by causing a victim to be drugged constituted "force." We benefit from two recent decisions which deal specifically with these issues: *People* v. *Dreas* (1984) 153 Cal.App.3d 623 [200 Cal.Rptr. 586] and *People* v. *Cicero* (1984) 157 Cal.App.3d 465 [204 Cal.Rptr. 582].[7]

The facts in *Dreas* may be summarized as follows. The defendant, Dreas, would patronize a bar, strike up a conversation with a prospective victim, and suggest they go to have coffee. At the victim's home, Dreas would surreptitiously insert a hypnotic sedative and tranquilizer into the victim's coffee. After the victim was unconscious, Dreas would take the victim's money. Dreas was convicted of robbery in violation of Penal Code section 211 which provides: "Robbery is the felonious taking of personal property in the possession of another, from his personal or immediate presence, and against his will, accomplished by means of force or fear." On appeal, Dreas contended the evidence was insufficient to sustain the robbery conviction because the use of drugs did not constitute "means of force or fear." The appellate court disagreed and stated: "While the issue thus presented is one of first impression in California, the legal authorities and sister state cases unanimously underline that the administering of drugs to overcome the victim's resistance does constitute force within the purview of section 211. [¶] Thus, Professor Perkins addressing this issue in his treatise concluded that: 'Just as battery may be committed by the administration of poison, so the force used to obtain property from a person against his will may be applied

[6]California Rules of Court, rule 31(a) provides in relevant part: "In the cases provided by law, an appeal is taken by filing a written notice of appeal with the clerk of the superior court within 60 days after . . . the making of the order."

[7]The People base their appeal primarily on the *Dreas* and *Cicero* decisions. We note Lusk discusses neither the *Dreas* nor *Cicero* decision.

internally.' (Perkins & Boyce, Criminal Law (3d ed. 1982) p. 348.) Other scholars have reached identical conclusions. LeFave and Scott write: 'One may commit robbery by striking his victim with fist or weapon and then, having thus rendered the victim unconscious or dazed or unwilling to risk another blow, taking property away from him. One may also render one's victim helpless by more subtle means, as by administering intoxicating liquors or drugs in order to produce a state of unconsciousness or stupefaction; to act in this way is to use force for purposes of robbery.' (LeFave & Scott, Criminal Law (1972) pp. 697-698; accord, 4 Wharton's Criminal Law (14th ed. 1981) § 479, p. 67.) . . . [¶] The principles set out above rest on sound logical foundation. A showing of 'force or fear' is not (and cannot be) limited to external forces such as bludgeoning the victim or displaying a lethal weapon to overcome his will and resistance. A poison or intoxicant, although internally applied, may also serve as a potent means to achieve the same goal. . . ." (*Id.*, at p. 628.)

Before turning to section 288, subdivision (b), we note in the crime of rape, the Legislature has explicitly proscribed sexual intercourse accomplished where the victim is prevented from resisting by any controlled substance. (Pen. Code, § 261, subd. (3).)[8] ■ The Legislature has not provided a counterpart to section 261, subdivision (3) in section 288 crimes involving lewd acts on children under 14 years. However, we do not construe this anomaly to mean the term "force" as used in section 288, subdivision (b) must exclude preventing resistance by causing a victim to be drugged. To the contrary, the concept of "force" as expressed in *People v. Dreas, supra,* 153 Cal.App.3d 623 and *People v. Cicero, supra,* 157 Cal.App.3d 465 (discussed below) compels our conclusion that preventing resistance by causing a victim to be drugged constitutes use of force within the meaning of section 288, subdivision (b).

*Cicero* is the first California decision to construe the term "force" as used in section 288, subdivision (b).[9] There, the defendant approached two

---

[8]Penal Code section 261, subdivision (3) provides: "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances . . . [¶] (3) Where a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, administered by or with the privity of the accused."

[9]Recently, *People v. Kusumoto* (1985) 169 Cal.App.3d 487 [215 Cal.Rptr. 347] construed the term "force" as used in Penal Code section 289, subdivision (a), which provides: "Every person who causes the penetration, however slight, of the genital or anal openings of another person, by any foreign object, substance, instrument, or device when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person for the purpose of sexual arousal, gratification, or abuse, shall be punished by imprisonment in the state prison for three, six, or eight years." In *Kusumoto,* the 13-year-old victim was sleeping, and awoke to find the defendant's hand in her shorts and finger in her vagina. The defendant, having

girls, ages 11 and 12 years, in a friendly manner while the girls were throwing rocks into a waterway. The defendant said, "Why don't I throw you both in the water"; then, he picked them up by the waist, one under each arm, and began to carry them. As he did so, the girls slipped down, and the defendant moved his hands between their legs, opening and closing his hands on their crotches. The girls thought the defendant was playing a game and made no attempt to resist or leave. When the defendant and girls sat down, the girls became scared. The defendant said he wanted to kiss them. The girls ran away. The defendant was convicted of two counts of violating section 288, subdivision (b), although the court found no violence or threat of great bodily harm. On appeal, the defendant contended there was insufficient evidence to support the trial court's finding he committed the lewd acts by force. The appellate court concluded the lewd acts were committed by force and affirmed the convictions.

Because the *Cicero* facts involved no physical harm to either girl, the *Cicero* court asked: "Is physical harm to the child an essential ingredient of 'force' in subdivision (b)?" (*Id.,* 157 Cal.App.3d at p. 474.) To answer this question, the *Cicero* court examined the interpretation of "force" as used in the crime of rape, section 261, subdivision (2). After reviewing several authorities, the *Cicero* court concluded: "As these authorities make clear, the fundamental wrong at which the law of rape is aimed is not the application of physical harm. Rather, the law of rape primarily guards the integrity of a woman's will and the privacy of her sexuality from an act of intercourse undertaken without her consent. Because the fundamental wrong is the violation of a woman's will and sexuality, the law of rape does not require that 'force' cause physical harm. Rather, in this scenario, 'force' plays merely a supporting evidentiary role, as necessary only to insure an act of intercourse has been undertaken against a victim's will. It seems both logical and fair to us that if the will and sexuality of an adult woman are protected by the Penal Code, then the will and sexuality of children deserve no lesser protection. Accordingly, both logic and fairness compel the conclusion that 'force' in subdivision (b) must reasonably be given the same established meaning it has achieved in the law of rape: *'force' should be defined as a method of obtaining a child's participation in a lewd act in*

---

been convicted of violation of section 289, subdivision (a), argued on appeal there was insufficient evidence of "force." The court agreed and reversed, concluding "the requirement of 'force' in section 289, subdivision (a) simply cannot be stretched to encompass the type of conduct involved in this case, where the victim was penetrated while asleep and where the victim's will was not overcome by any physical force substantially different from or greater than that necessary to accomplish the act itself."

Our case differs significantly from *Kusumoto* because Lusk caused the victim, Tony, to be drugged to unconsciousness to prevent his resistance. By contrast, *Kusumoto's* victim had fallen asleep naturally before she was assaulted. *Kusumoto* took advantage of the situation but did not cause it.

*violation of a child's will and not exclusively as a means of causing physical harm to the child." (Id.,* at p. 475, italics supplied.) We agree with the *Cicero* court on this point.

However, the *Cicero* facts required that court to analyze "force" in light of the girls' conscious lack of resistance to the defendant's lewd acts. Here, although the victim, Tony, did not resist, his inaction was not conscious, but caused by Lusk.[10]

Lusk committed lewd acts by use of force because he caused Tony to be drugged, thereby destroying Tony's free will and preventing his resistance. It is immaterial whether weapons or dangerous drugs are used to violate a victim's free will and prevent resistance.

## IV

Consecutive sentencing laws set forth in section 667.6, subdivisions (c) and (d) apply if a defendant is convicted of violating section 288, subdivision (b); by contrast, they do not apply to convictions under section 288, subdivision (a). Therefore, Lusk is subject to significantly more severe punishment if he is convicted under section 288, subdivision (b) instead of section 288, subdivision (a). The court recognized this important distinction. Just before accepting Lusk's guilty plea, the court advised Lusk: "As to Tony . . . since we don't have a force allegation any more, these particular counts cannot be given full consecutive sentences. So, therefore, we are relegated to one-third of the mid term, which would give you an exposure of two years on each of the lewd and lascivious counts. The way I'm seeing it right now . . . the court is limited to a 15-year term."

Unquestionably, Lusk's guilty plea to the entire information and admission of the truth of all the special allegations were given in reliance on the court's statement of the sentencing parameters. However, because the court's representations were based on 22 counts treated as section 288, subdivision (a) instead of section 288, subdivision (b) charges, the court substantially underestimated Lusk's punishment exposure. In light of our decision, Lusk's guilty plea to the section 288, subdivision (a) counts and admission of the truthfulness of the related special allegations is a nullity because the section 288, subdivision (b) counts and related special allegations are reinstated. Therefore, Lusk must be given the opportunity to withdraw his guilty plea to all remaining counts and his admission of the truth-

---

[10]The evidence presented at the preliminary hearing was sufficient to support the reasonable inference that Lusk prevented Tony's resistance by causing him to be drugged so Lusk could commit sexual acts upon him.

fulness of the special allegation as to count 46.[11] (Penal Code, § 1260; see also *People* v. *Coleman* (1977) 72 Cal.App.3d 287 [139 Cal.Rptr. 908].)

Lusk requests that we direct the court to grant him the same conduct credits he would receive as an inmate incarcerated in prison. This issue is premature and we do not address it.[12]

The superior court's order of March 8, 1984, is reversed insofar as the section 288, subdivision (b) counts were modified to 288, subdivision (a) counts;[13] and the section 288, subdivision (b) counts and corresponding special allegations are reinstated. The superior court is directed, upon Lusk's motion, which must be brought within 30 days of the return of the remittitur, to vacate Lusk's guilty plea to all remaining counts[14] and his admission of the truth of the special allegation as to count 46.

Sonenshine, Acting P. J., and Crosby, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 14, 1985. Broussard, J., and Reynoso, J., were of the opinion that the petition should be granted.

---

[11]The special allegations relate to 15 counts which are included in the section 288, subdivision (b) counts and count 46, which is not so included.

[12]Lusk also requests sanctions claiming the People's appeal is frivolous. In light of our decision, the appeal can hardly be frivolous.

[13]Counts 18-28; 30-33; and 36-42.

[14]Counts 1-17; 29; 34-35; and 43-46.